# SUPER LAW GROUP, LLC

June 2, 2021

<u>**Via Certified Mail, Return Receipt Requested**</u>

Rockland Transit Mix Inc.
381 Route 59
West Nyack, New York 10994

Bruno Palmieri
381 Route 59
West Nyack, New York 10994

Re:   <u>Notice of Violation and Intent to File Suit under the Clean Water Act</u>

To Whom It May Concern,

We are writing on behalf of Hackensack Riverkeeper, Inc.[1] and New City Neighborhood Association, Inc.[2] (collectively, "Notifiers") to notify you of Notifiers' intent to file suit against Rockland Transit Mix Inc. and Bruno Palmieri (collectively, "Rockland Transit Mix") pursuant to Section 505(a) of the federal Clean Water Act ("CWA")[3] for violations of the CWA.

Notifiers intend to file suit, as an organization and on behalf of their adversely affected members, in the United States District Court for the Southern District of New York seeking appropriate equitable relief, civil penalties, and other relief no earlier than 60 days from the postmark date of this letter.[4]

Notifiers intend to take legal action because Rockland Transit Mix is discharging polluted stormwater from its ready-mix concrete facility located at 381 Route 59, West Nyack, New York 10994 ("the Facility"), to the waters of the United States without a permit in violation of CWA Sections 301(a) and 402(p).[5] Further, Rockland Transit Mix has not applied for coverage under, nor complied with the conditions of, an individual National Pollutant Discharge Elimination System ("NPDES") permit or the Multi-Sector General Permit for the Discharge of Stormwater

---

[1] Hackensack Riverkeeper, Inc. is a not-for-profit environmental organization existing under the laws of the state of New Jersey, headquartered in Hackensack, New Jersey.  Hackensack Riverkeeper's mission is to protect and preserve the Hackensack River and its watershed.  Hackensack Riverkeeper achieves its mission through public education, advocacy for sound public policies, and participation in legal and administrative forums.  Hackensack Riverkeeper has many members that reside near to, use, and enjoy the Hackensack River and its tributaries.
[2] New City Neighborhood Association, Inc. is a not-for-profit organization existing under the laws of the state of New York, headquartered in New City, New York.  New City Neighborhood Association's mission is to educate residents of New City, New York on the various issues affecting their neighborhood, and to protect and preserve their quality of life.  New City Neighborhood Association has more than 250 members, many of whom reside near to, use, consume, and enjoy the Hackensack River and its tributaries.
[3] 33 U.S.C. § 1365(a). We refer to statutory provisions by their section in the Clean Water Act and provide the parallel citation to the United States Code only on first reference.
[4] *See* 40 C.F.R. § 135.2(a)(3)(c) (notice of intent to file suit is deemed to have been served on the postmark date).
[5] 33 U.S.C. §§ 1311(a) and 1342(p)(2)(B).

Notice of Violation and Intent to File Suit
June 2, 2021
Page 2 of 19

Associated with Industrial Activity ("General Permit")[6] issued by the New York State Department of Environmental Conservation ("DEC"), in violation of CWA Section 402(p), and 40 C.F.R. §§ 122.26(c)(1) and (e)(1).

# I.

## BACKGROUND

With every rainfall event, hundreds of millions of gallons of polluted rainwater pour into the Hackensack River and other receiving waters. The consensus among agencies and water quality specialists is that stormwater pollution accounts for more than half of the total pollution entering the marine environment each year.[7]

To protect the waters of the United States from such pollution, the CWA prohibits the discharge of pollutants from a "point source" into the waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit. NPDES permits are issued by the United States Environmental Protection Agency ("EPA") or by states that have been authorized by EPA to act as NPDES permitting authorities, provided that the state permitting program ensures compliance with the procedural and substantive requirements of the CWA.[8] In New York, DEC has been delegated the authority to issue NPDES permits. As a delegated state NPDES permitting agency, DEC has elected to issue a statewide general permit for industrial stormwater discharges in New York. The current version of the General Permit came into effect on March 1, 2018. DEC also has the authority to issue SPDES permits for individual applicants.

DEC has designated more than 7,000 river miles, 319,000 acres of larger waterbodies, 940 square miles of bays and estuaries, and 592 miles of Great Lakes shoreline in the State as "impaired," or not meeting water quality standards, and unable to support beneficial uses such as fish habitat and water contact recreation.[9] For the overwhelming majority of water bodies listed as impaired, stormwater runoff is cited as a primary source of the pollutants causing the impairment.[10] Contaminated stormwater discharges can and must be controlled in order to improve the quality and health of these waterbodies.

---

[6] *SPDES Multi-Sector General Permit For Stormwater Discharges Associated With Industrial Activity*, Permit No. GP-0-17-004, N.Y. DEP'T ENVTL. CONSERVATION (Mar. 1, 2018) [hereinafter *General Permit*], https://www.dec.ny.gov/docs/water_pdf/msgp017004.pdf. This General Permit replaces earlier general permits for the discharge of stormwater associated with industrial activity and will expire on February 28, 2023.
[7] Stormwater is water from precipitation events that flows across the ground and pavement after it rains or after snow and ice melt. *See* 40 C.F.R. § 122.26(b)(13).
[8] CWA § 402(b)(1), 33 U.S.C. § 1342(b)(1); 40 C.F.R. § 123.25(a).
[9] *New York Assessment Data*, U.S. ENVTL. PROT. AGENCY (2012), http://ofmpub.epa.gov/waters10/attains_state.report_control?p_state=NY&p_cycle=2012&p_report_type=A; *see also NYS Section 305(b) Water Quality Report*, N.Y. DEP'T ENVTL. CONSERVATION (2016), http://www.dec.ny.gov/chemical/66532.html.
[10] *See generally id.*, *Executive Summary*, at 4, http://www.dec.ny.gov/docs/water_pdf/305bexecsumm10.pdf (identifying urban stormwater runoff as a top ten source of water quality impairment); *Top Ten Water Quality Issues in New York State*, at 1, http://www.dec.ny.gov/docs/water_pdf/305btopten10.pdf (identifying urban stormwater runoff as the top source of pollution for impaired waterways in New York State).

Notice of Violation and Intent to File Suit
June 2, 2021
Page 3 of 19

Stormwater discharges flow downhill from the Facility into a nearby stormwater pond, which flows into a tributary of the Hackensack River.

DEC has classified the Hackensack River, at the point(s) where the Facility discharges, as a Class A water.[11]  Under New York's Water Quality Standards, a waterbody that is designated Class A is meant to be suitable as a potential source of drinking water, for primary and secondary contact recreation, fishing, and for fish, shellfish, and wildlife propagation and survival.[12]  The New York Water Quality Standards also set numeric and narrative criteria for different water pollution parameters including dissolved oxygen, oil and grease, suspended and settleable solids, bacteria (pathogens), pH, temperature, nutrients, and others.[13]  A waterbody must meet these numeric and narrative criteria in order to support its designated uses.[14]

The Hackensack River consistently fails to meet state water quality standards; illegal stormwater discharges from this Facility contribute to this failure.[15]  In the past, DEC has designated the Hackensack and its tributaries as impaired pursuant to CWA Section 303(d)[16] for biological impacts.[17]

The Hackensack River's water quality should not be sacrificed to pollutants.  At a minimum, Rockland Transit Mix must stop illegally discharging polluted stormwater and other effluents.

## II.

## STANDARDS AND LIMITATIONS ALLEGED TO HAVE BEEN VIOLATED AND ACTIVITIES ALLEGED TO BE VIOLATIONS

### A. Rockland Transit Mix Is Discharging Stormwater Associated with Industrial Activity to Waters of the United States without a Permit.

The CWA prohibits the discharge of pollutants to the waters of the United States except in accordance with a valid NPDES permit.[18] Rockland Transit Mix's industrial activity at the Facility has caused and continues to cause a "discharge of pollutants" within the meaning of CWA Section 502(12)[19] and a "stormwater discharge associated with industrial activity" within

---

[11] 6 N.Y.C.R.R. § 865.6.

[12] 6 N.Y.C.R.R. § 701.6.

[13] *See generally* 6 N.Y.C.R.R. §§ 702, 703 (outlining quantitative and qualitative standards, respectively).

[14] *See generally* Division of Water Technical and Operational Guidance Series, *Ambient Water Quality Standards and Guidance Values and Groundwater Effluent Limitations*, N.Y. DEP'T ENVTL. CONSERVATION, (June 1998), http://www.dec.ny.gov/docs/water_pdf/togs1112.pdf [hereinafter *TOGS*].

[15] *Section 303(d) List of Impaired Waters Requiring a TMDL/Other Strategy*, N.Y. DEP'T ENVTL. CONSERVATION, 27 (June 2020), https://www.dec.ny.gov/docs/water_pdf/section303d2018.pdf [hereinafter "*303(d) List*"].

[16] 33 U.S.C. § 1313(d).

[17] *303(d) List*, *supra* note 16, at 27.

[18] CWA §§ 301(a), 402.

[19] 33 U.S.C. § 1362(12).

Notice of Violation and Intent to File Suit
June 2, 2021
Page 4 of 19

the meaning of 40 C.F.R. § 122.26(b)(14) from the Facility on at least each and every day that there has been a rain event of more than 0.1 inches.[20]

Rockland Transit Mix's activities at the Facility include, but are not limited to, the purchase, collection, processing, and outdoor storage, of sand, aggregate, stone, Portland cement, and other substances used in manufacturing, loading, and delivering ready mix concrete. Upon information and belief, the Facility houses a ready mix concrete plant, truck washing equipment, and materials piles that are all potential sources of industrial pollutants. Rockland Transit Mix mixes raw materials into concrete on site, transfers the concrete to trucks, washes out trucks at the Facility, and stores a variety of finished concrete products, other building materials, and open containers on site, exposed to stormwater.

In carrying out these activities at the Facility, Rockland Transit Mix stores and handles materials in a manner that exposes them to precipitation and snowmelt. In particular, raw materials piles, machinery, and trucks that have completed their deliveries can release pollutants onto the Facility property including aggregate, sand, Portland cement, cement additives, waste materials reused in concrete manufacture and other minerals such as shale, clay, limestone, slate, slag, pumice, fly ash, baghouse settled dust, oil and grease. If specialty concretes or cast/formed products are demanded by a customer, the Facility may also house form release agents, latex sealants, and bitumastic coatings. All of these wastes can release solids that suspend or dissolve in stormwater, lead, iron, zinc, oil and grease, oxygen-demanding and pH-altering pollutants into the Hackensack River.[21]

All of these pollution sources are exposed to precipitation and snowmelt. In addition to waste residues, these pollution sources also may release fuel, oil, lubricants, PCBs, PAHs, an array of metals, pH-affecting substances, and chemical residues. These toxic pollutants are often generated in the form of small particulate matter, which settles on the ground and other surfaces that are exposed to stormwater and non-stormwater flows.

Because Rockland Transit Mix fails to adequately shelter and otherwise contain these materials to prevent their release to the environment, precipitation falls on and flows over exposed materials, fluids, and particulates. Polluted stormwater discharges flow from the Facility into a stormwater pond downhill of the Facility, and this stormwater pond then flows into a tributary of the Hackensack River. Discharge points at the Facility include but are not limited to the Facility's driveways and adjacent storm drains.

The Hackensack River and its tributaries are "water[s] of the United States," as defined in 40 C.F.R. § 122.2 and, therefore, "navigable water[s]" as defined in CWA Section 502(7). Rockland Transit Mix does not have a NPDES permit for these discharges of pollutants. Thus,

---

[20] EPA has determined that precipitation greater than 0.1 inches in a 24-hour period constitutes a measurable precipitation event for the purposes of evaluating stormwater runoff associated with industrial activity. *See, e.g.*, 40 C.F.R. § 122.26(c)(i)(E)(6) (using 0.1 inches as the distinguishing threshold of a storm event).
[21] *See Industrial Stormwater Fact Sheet Series – Sector E*, EPA-833-F-06-020, U.S. ENVTL. PROT. AGENCY (Feb. 2021), https://www.epa.gov/sites/production/files/2015-10/documents/sector_e_glass.pdf.

Notice of Violation and Intent to File Suit
June 2, 2021
Page 5 of 19

Rockland Transit Mix is discharging polluted industrial stormwater into navigable waters of the United States without the permit required under CWA Sections 301 and 402.

**B.**      **Rockland Transit Mix is Failing to Apply for NPDES Permit Coverage.**

Rockland Transit Mix is engaged in the business of manufacturing ready mix concrete at the Facility.  Rockland Transit Mix is therefore an industrial discharger engaged in manufacturing ready mix concrete under Standard Industrial Classification ("SIC") Code 3273, which is an industrial activity included in Sector E of the General Permit.  Pursuant to CWA Section 402(p) and the regulations promulgated by EPA pursuant to the CWA, Rockland Transit Mix must apply for coverage under the General Permit or an individual NPDES permit for Rockland Transit Mix's discharge of polluted stormwater. In addition, Rockland Transit Mix must apply for an individual NPDES permit if the Facility is discharging process wastewater, or has any other non-stormwater discharge containing pollutants, that is not authorized by the General Permit. By failing to apply for coverage under the General Permit or an individual permit, Rockland Transit Mix is violating CWA Sections 301(a), 402(a) and 402(p) and 40 C.F.R. §§ 122.26(c)(1) and (e)(1).[22]

To be eligible to discharge stormwater associated with its industrial activities under the General Permit, Rockland Transit Mix must submit to DEC a registration form called a "Notice of Intent."[23]  To register, Rockland Transit Mix is required, among other things, to list all stormwater discharges, to describe each of the industrial activities taking place in the drainage area of each discharge and the acreage of industrial activity exposed to stormwater, the immediate surface water body or wetland to which site runoff discharges, and the name of the watershed and nearest waterbody to which the site ultimately discharges and information about whether the receiving waters are impaired.  Rockland Transit Mix has failed to prepare and file a Notice of Intent or an application for an individual permit.

**C.**      **Rockland Transit Mix is Failing to Comply with the General Permit.**

As a discharger of stormwater associated with industrial activity, Rockland Transit Mix must comply at all times with the requirements of the General Permit (or an individual permit).  By discharging stormwater associated with industrial activity without complying with the

---

[22] Sections 301(a) and 402(a) and (p) make it unlawful for Rockland Transit Mix to discharge stormwater associated with industrial activity without obtaining a NPDES permit.  40 C.F.R. Sections 122.26(c)(1) and (e)(1) require Rockland Transit Mix to apply for a NPDES permit that covers Rockland Transit Mix's discharge of stormwater associated with industrial activity.

[23] *General Permit*, *supra* note 6, Part I.D.1.a.2.  In notifying Rockland Transit Mix that it is violation of the General Permit, Notifiers do not concede that all of the activities conducted at the Facility are necessarily eligible for coverage under that permit.  For example, if a Facility is discharging process wastewater, such as wash water, or has any other polluted non-stormwater discharge that is not authorized by the General Permit, then an individual NPDES permit is required and the failure to obtain and comply with an individual NPDES permit for such discharges also violates CWA §§ 301(a) and 402(p).  The conditions for eligibility to discharge under the General Permit are provided at Part I.B of the permit.

Notice of Violation and Intent to File Suit
June 2, 2021
Page 6 of 19

General Permit, Rockland Transit Mix is violating CWA Sections 301(a) and 402(a) and (p).[24] The following summarizes the main General Permit requirements that Rockland Transit Mix has failed and continues to fail to meet.

1.      **Rockland Transit Mix has not developed and implemented a Stormwater Pollution Prevention Plan.**

Before submitting a registration form, Rockland Transit Mix must prepare, make available, and implement a Stormwater Pollution Prevention Plan ("SWPPP") in accordance with schedules established in the General Permit.[25] The SWPPP must identify potential sources of pollution that may affect the quality of stormwater discharges associated with industrial activity. Further, the SWPPP must describe and ensure the implementation of practices that minimize the discharge of pollutants in these discharges and that assure compliance with the other terms and conditions of the General Permit, including achievement of effluent limitations.[26]

Among other things, the SWPPP must include: a general site description; a general location map identifying the location of the facility and all receiving waters to which stormwater discharges; information related to a company stormwater pollution prevention team; a summary of potential pollutant sources; a description of control measures and best management practices; and schedules and procedures for implementation of control measures, monitoring, and inspections.[27]

Rockland Transit Mix has not developed and implemented a legally compliant SWPPP for the Facility, as required by Part III of the General Permit.[28]

2.      **Rockland Transit Mix has not implemented control measures and Best Management Practices that meet the best available technology standards.**

Rockland Transit Mix cannot legally discharge stormwater under the General Permit from the Facility until Rockland Transit Mix implements mandatory general and sector-specific control measures called Best Management Practices ("BMPs") in order to minimize the discharge of pollutants from the Facility.[29]  The selected measures must reduce the discharge of pollution from each Facility to the extent practicable through use of the best available technology for the industry.

The General Permit requires that the owner or operator must select, design, install, and implement control measures (including best management practices), in accordance with good

---

[24] Sections 301(a) and 402(a) and (p) make it unlawful for Rockland Transit Mix to discharge stormwater associated with industrial activity without first complying with all of the conditions established in a NPDES permit.
[25] *General Permit*, *supra* note 6, Part III.C.
[26] *Id.,* Part III.A.
[27] *Id.*
[28] Notifiers believes no SWPPPs exist for the Facility.  If a SWPPP exists at the Facility, then it is either facially inadequate or has not been fully and adequately implemented.
[29] *General Permit*, *supra* note 6, Part II.D; *see also id.*, Part VII (setting forth sector-specific control measures and practices).

Notice of Violation and Intent to File Suit
June 2, 2021
Page 7 of 19

engineering practices, to meet the effluent limits contained in the permit.[30]  The General Permit's effluent limits include both limits specific to certain sectors[31] and limits that apply to all facilities.[32]  These restrictions include minimizing the exposure of pollutants to stormwater and minimizing the discharge of pollutants in stormwater to the extent achievable using control measures (including best management practices) that are technologically available, economically practicable, and achievable in light of best industry practice.[33]

Rockland Transit Mix has not minimized exposure of pollutants or the discharge of pollution to the extent achievable by implementing control measures or BMPs that are technologically achievable and economically practicable and achievable in light of best industry practice, as required by Parts II and VII of the General Permit.

3.      **Rockland Transit Mix has not conducted routine site inspections and complied with monitoring, recordkeeping, and reporting requirements.**

Rockland Transit Mix must conduct an annual comprehensive site inspection and evaluation of areas where industrial materials or activities are exposed to precipitation or where spills and leaks have occurred within the past three years.[34]  The inspection must ensure that all stormwater discharges are adequately controlled and that all BMPs are functioning as expected.[35]  Records of this inspection must be kept for five years.[36]

In addition, qualified facility personnel must carry out routine inspections at least quarterly.[37]  During these inspections, personnel must evaluate conditions and maintenance needs of stormwater management devices, detect leaks and ensure the good condition of containers, evaluate the performance of the existing stormwater BMPs described in the SWPPP, and document any deficiencies in the implementation and/or adequacy of the SWPPP.[38]  Such deficiencies must then be addressed through corrective actions.[39]

The General Permit requires that all covered facilities conduct multiple types of analytical monitoring, and DEC may require additional individualized monitoring as well.[40]  In particular, all facilities authorized under the General Permit must, at minimum:

---

[30] *General Permit*, *supra* note 6, Part II; *see also id.*, Part III.A.7 ("The SWPPP must document in writing the location and type of BMPs installed and implemented at the facility to achieve the non-numeric effluent limits in Part II.A. and where applicable in Part VII, and the sector specific numeric effluent limitations in Part VII.").
[31] *See generally id.*, Part VII (laying out sector-specific requirements).
[32] *Id.*, Part II.
[33] *Id.* ("Effluent limits are required to minimize the discharge of pollutants.  The term 'minimize' means reduce and/or eliminate to the extent achievable using control measures (including Best Management Practices . . .) that are technologically available and economically practicable and achievable in light of best industry practice.").
[34] *Id.*, Part IV.A.1.
[35] *Id.*
[36] *Id.*, Part IV.A.2.
[37] *Id.*, Part IV.B.
[38] *Id.*
[39] *Id.*, Part V.
[40] *Id.*, Part IV.F.1, 2.

Notice of Violation and Intent to File Suit
June 2, 2021
Page 8 of 19

- conduct visual monitoring of stormwater discharges at least quarterly;[41]
- collect and analyze stormwater samples for each outfall at least semi-annually;[42]
- perform an annual dry weather inspection to detect non-stormwater discharges;[43]
- inspect, sample, and monitor discharges from secondary containment structures and transfer areas;[44]
- document storm events during which any samples are taken;[45]
- document all of these monitoring activities;[46]
- keep records of the monitoring with the Facility's SWPPP;[47] and
- submit an annual report to DEC accompanied by a Discharge Monitoring Report detailing the results of all required stormwater samples, as well as reports that document any instance of non-compliance with benchmarks or numeric effluent limitations.[48]

In addition, because Rockland Transit Mix engages in industrial activities associated with Sector E, sampling is required for:

- Aluminum;
- Total Suspended Solids;
- pH; and
- Iron.[49]

Notifiers are not necessarily aware of all industrial activities taking place at the Facility. To the extent that industrial activities other than the above are carried out at the Facility, other sampling may be required as well.[50]  This notice provides Rockland Transit Mix with sufficient information to identify the standards and limitations that apply to all categories of industrial activity.

Rockland Transit Mix has failed at the Facility to conduct the required annual and other routine inspections, monitoring, and testing, as required by, at least, Parts IV, VI, and VII of the General Permit. Rockland Transit Mix also has failed to retain records and submit monitoring reports to DEC pertaining to the Facility, as required by, at least, Parts IV, VI, and VII of the General Permit.

4.     **Rockland Transit Mix has failed to comply with additional requirements located in Part VII of the General Permit.**

---

[41] *General Permit*, *supra* note 6, Part IV.E.
[42] *Id.*, Part IV.F.2.
[43] *Id.*, Part IV.C.
[44] *Id.*, Part IV.F.1.e.
[45] *Id.*, Part IV.D.3.
[46] *Id.,* Parts IV, VI.
[47] *Id.*, Part IV.A.2.
[48] *Id.*, Part VI.A.
[49] *Id.*, Part VII.E.
[50] *See generally id.*, Part VII (outlining sector-specific requirements).

Notice of Violation and Intent to File Suit
June 2, 2021
Page 9 of 19

As noted above, the General Permit contains various requirements specific to Sector E. These requirements are collected in Part VII of the General Permit.  Rockland Transit Mix has failed to comply with these additional requirements of Part VII of the General Permit.

**D.    Rockland Transit Mix is Clearly Violating the Clean Water Act.**

In sum, Rockland Transit Mix's discharge of stormwater associated with industrial activities without a permit, Rockland Transit Mix's failure to apply for permit coverage, and Rockland Transit Mix's failure to comply with the above-listed conditions of the General Permit (or an individual NPDES permit) constitute violations of the General Permit and of Sections 301(a) and 402(p) of the Clean Water Act.

**III.**

**PERSONS RESPONSIBLE FOR ALLEGED VIOLATIONS**

Rockland Transit Mix Inc. and Bruno Palmieri (collectively, "Rockland Transit Mix") are the persons responsible for the violations alleged in this Notice.  Rockland Transit Mix has operational control over the day-to-day industrial activities at this Facility.  Therefore, Rockland Transit Mix is responsible for managing stormwater at the Facility in compliance with the CWA. Notifiers hereby put Rockland Transit Mix on notice that if Notifiers subsequently identify additional persons as also being responsible for the violations set forth above, Notifiers intend to include those persons in this action.

**IV.**

**LOCATION OF THE ALLEGED VIOLATION**

The violations alleged in this Notice have occurred and continue to occur at the Facility located at 381 Route 59, West Nyack, New York 10994.  Stormwater associated with industrial activity discharges into a pond and tributary of the Hackensack River.  The failure to develop and implement pollution prevention plans and take the other required measures are violations occurring at the Facility in general and in the inadequate documents themselves.[51]

**V.**

**DATES OF VIOLATION**

Every day upon which Rockland Transit Mix has failed to apply for permit coverage since Rockland Transit Mix first commenced operations at the Facility and discharged polluted

---

[51] The federal courts have held that a reasonably specific indication of the area where violations occurred, such as the name of the facility, is sufficient and that more precise locations need not be included in the notice.  *See, e.g.*, *NRDC v. Sw. Marine, Inc.*, 945 F. Supp. 1330, 1333 (S.D. Cal. 1996), *aff'd* 236 F.3d 985, 996 (9th Cir. 2000); *City of New York v. Anglebrook Ltd. P'ship*, 891 F. Supp. 900, 908 (S.D.N.Y. 1995); *United Anglers v. Kaiser Sand & Gravel Co.*, No. C 95-2066 CW, 1995 U.S. Dist. LEXIS 22449 at *4 (N.D. Cal. Sept. 27, 1995).

Notice of Violation and Intent to File Suit
June 2, 2021
Page 10 of 19

stormwater is a separate violation of CWA Section 301(a) and EPA's regulations implementing the CWA.[52]

Additionally, Rockland Transit Mix has discharged pollution without a permit in violation of Section 301(a) of the CWA on every day since Rockland Transit Mix commenced operations at the Facility on which there has been a measurable precipitation event or discharge of previously accumulated precipitation (i.e., snowmelt) over 0.1 inches.

Figure 1 sets forth specific rain dates on which Notifiers alleges that the Facility discharged storm water from its unpermitted outfall in violation of Section 301(a) of the Clean Water and of the General Permit. The second column shows rainfall events logged by the National Oceanic and Atmospheric Administration as multi-day events. Notifiers alleges that the Facility discharged stormwater on every day of these events, as the average daily precipitation for the event is greater than 0.1 inch per day. The third column shows precipitation total for single day events. Notifiers alleges that the Facility discharged stormwater on each day on which at least 0.1 inch of rain fell. The fourth column shows snow depth. Notifiers alleges that the Facility discharged stormwater on at least one day following each day of snow accumulation greater than 1.0 inch (shown here in water-equivalent inches). This list of dates is not exclusive, and Notifiers hereby notifies Rockland Transit Mix that Notifiers intends to take legal action regarding any other days on which Notifiers later learns that Rockland Transit Mix discharged pollutants from the Facility. In sum, Notifiers alleges that the Facility discharged stormwater from its unpermitted outfalls on 435 days.

Finally, if Rockland Transit Mix seeks permit coverage after receiving this letter but fails to fully comply with the requirements of the General Permit (or an individual permit), each day upon which Rockland Transit Mix claims coverage under a NPDES permit but fails to comply with that permit will constitute a separate day of violation with respect to each unmet condition of that permit.

**Figure 1: NOAA Precipitation Data, May 10, 2016 through May 10, 2021[53]**

| Date | Multi-Day | Precip. | Snow | Date | Multi-Day | Precip. | Snow |
|------|-----------|---------|------|------|-----------|---------|------|
| 5/14/2016 | | 0.26 | | 6/9/2016 | | 0.18 | |
| 5/22/2016 | | 0.22 | | 6/17/2016 | | 0.15 | |
| 5/24/2016 | | 0.13 | | 6/28/2016 | | 0.52 | |
| 5/30/2016 | | 1.09 | | 6/29/2016 | | 0.24 | |
| 6/5/2016 | | 0.11 | | 7/2/2016 | | 0.69 | |
| 6/6/2016 | | 0.65 | | 7/5/2016 | | 0.53 | |

[52] *See also* 33 U.S.C. §§ 402(p)(3)(A) and (p)(4)(A) (requiring the establishment of industrial stormwater NPDES permits and of a permit application process).

[53] The rain dates in the table are all the days when 0.1 inch or more rain was observed at the nearest weather station to the Facility. Rain data was accessed from the National Oceanic and Atmospheric Administration. *Climate Data Online Search*, NAT'L OCEANIC & ATMOSPHERIC ADMIN., https://www.ncdc.noaa.gov/cdo-web/search (last visited May 27, 2021).

Notice of Violation and Intent to File Suit
June 2, 2021
Page 11 of 19

| Date | Multi-Day | Precip. | Snow |
|---|---|---|---|
| 7/10/2016 | | 0.55 | |
| 7/26/2016 | | 0.62 | |
| 7/29/2016 | | 0.8 | |
| 7/30/2016 | | 0.11 | |
| 7/31/2016 | | 0.91 | |
| 8/1/2016 | | 2.54 | |
| 8/11/2016 | | 0.17 | |
| 8/12/2016 | | 0.62 | |
| 8/14/2016 | | 0.55 | |
| 8/15/2016 | | 0.12 | |
| 8/17/2016 | | 0.12 | |
| 8/22/2016 | | 1.3 | |
| 9/2/2016 | | 0.11 | |
| 9/20/2016 | | 0.38 | |
| 9/27/2016 | | 0.45 | |
| 10/22/2016 | | 1.32 | |
| 10/23/2016 | | 0.2 | |
| 10/24/2016 | | 0.15 | |
| 10/28/2016 | | 1.22 | |
| 10/31/2016 | | 0.79 | |
| 11/10/2016 | | 0.15 | |
| 11/15/2016 | | 0.12 | |
| 11/16/2016 | | 1.85 | |
| 11/20/2016 | | 0.6 | |
| 11/30/2016 | | 1.52 | |
| 12/1/2016 | | 1.06 | |
| 12/5/2016 | | 0.16 | |
| 12/7/2016 | | 0.35 | |
| 12/12/2016 | | 0.45 | |
| 12/17/2016 | | 0.25 | 2 |
| 12/18/2016 | | 0.49 | |
| 12/25/2016 | | 0.31 | |
| 12/30/2016 | | 0.48 | |
| 1/3/2017 | | 0.26 | |
| 1/4/2017 | | 0.57 | |
| 1/8/2017 | | 0.28 | 3.7 |
| 1/11/2017 | | 0.25 | |
| 1/12/2017 | | 0.27 | |
| 1/18/2017 | | 0.46 | |

| Date | Multi-Day | Precip. | Snow |
|---|---|---|---|
| 1/24/2017 | | 1.71 | |
| 1/25/2017 | | 0.81 | |
| 2/1/2017 | | 0.11 | 2 |
| 2/8/2017 | | 0.31 | |
| 2/9/2017 | | 0.28 | 3 |
| 2/10/2017 | | 0.75 | 11 |
| 2/13/2017 | | 0.7 | 2.2 |
| 2/26/2017 | | 0.8 | |
| 3/2/2017 | | 0.19 | |
| 3/8/2017 | | 0.12 | |
| 3/10/2017 | | 0.08 | 1.5 |
| 3/11/2017 | | 0.25 | 4.1 |
| 3/14/2017 | | 0.58 | 6 |
| 3/15/2017 | | 1.07 | 17 |
| 3/16/2017 | | 0 | 12.5 |
| 3/17/2017 | | 0 | 11 |
| 3/26/2017 | | 0.19 | |
| 3/27/2017 | | 0.17 | |
| 3/28/2017 | | 0.44 | |
| 3/29/2017 | | 0.61 | |
| 3/31/2017 | | 0.26 | |
| 4/1/2017 | | 0.91 | |
| 4/4/2017 | | 1.19 | |
| 4/5/2017 | | 0.25 | |
| 4/7/2017 | | 0.84 | |
| 4/20/2017 | | 0.25 | |
| 4/21/2017 | | 0.53 | |
| 4/22/2017 | | 0.11 | |
| 4/26/2017 | | 0.93 | |
| 5/2/2017 | | 0.11 | |
| 5/6/2017 | | 2.14 | |
| 5/7/2017 | | 0.62 | |
| 5/13/2017 | | 0.14 | |
| 5/14/2017 | | 1.4 | |
| 5/23/2017 | | 0.23 | |
| 5/26/2017 | | 0.99 | |
| 5/29/2017 | | 0.1 | |
| 5/30/2017 | | 0.23 | |
| 5/31/2017 | | 0.1 | |

Notice of Violation and Intent to File Suit
June 2, 2021
Page 12 of 19

| Date | Multi-Day | Precip. | Snow |
|------|-----------|---------|------|
| 6/1/2017 | | 0.59 | |
| 6/5/2017 | | 0.22 | |
| 6/6/2017 | | 0.23 | |
| 6/7/2017 | | 0.12 | |
| 6/17/2017 | | 0.1 | |
| 6/18/2017 | | 0.18 | |
| 6/20/2017 | | 0.3 | |
| 6/24/2017 | | 0.58 | |
| 6/26/2017 | | 0.14 | |
| 6/27/2017 | | 0.13 | |
| 7/2/2017 | | 0.97 | |
| 7/8/2017 | | 2.37 | |
| 7/11/2017 | | 0.14 | |
| 7/14/2017 | | 0.34 | |
| 7/15/2017 | | 0.77 | |
| 7/24/2017 | | 0.34 | |
| 7/25/2017 | | 0.35 | |
| 8/3/2017 | | 0.19 | |
| 8/5/2017 | | 0.57 | |
| 8/8/2017 | | 0.57 | |
| 8/12/2017 | | 0.49 | |
| 8/15/2017 | | 0.1 | |
| 8/19/2017 | | 0.59 | |
| 8/23/2017 | | 0.28 | |
| 9/3/2017 | | 0.55 | |
| 9/4/2017 | | 0.36 | |
| 9/6/2017 | | 0.95 | |
| 9/7/2017 | | 0.65 | |
| 10/9/2017 | | 0.19 | |
| 10/10/2017 | | 0.18 | |
| 10/12/2017 | | 0.17 | |
| 10/30/2017 | | 2.82 | |
| 11/6/2017 | | 0.1 | |
| 11/8/2017 | | 0.25 | |
| 11/16/2017 | | 0.2 | |
| 11/19/2017 | | 0.22 | |
| 12/6/2017 | | 0.29 | |
| 12/10/2017 | | 0.38 | |
| 12/16/2017 | | 0.1 | |

| Date | Multi-Day | Precip. | Snow |
|------|-----------|---------|------|
| 12/23/2017 | | 0.22 | |
| 12/24/2017 | | 0.37 | |
| 12/25/2017 | | 0.25 | 1.3 |
| 1/5/2018 | | 0.62 | 6.5 |
| 1/13/2018 | | 1.39 | |
| 1/18/2018 | | 0.35 | 2 |
| 1/23/2018 | | 0.5 | |
| 1/24/2018 | | 0.29 | |
| 1/28/2018 | | 0.14 | |
| 2/2/2018 | | 0.14 | |
| 2/5/2018 | | 0.83 | |
| 2/8/2018 | | 0.69 | |
| 2/11/2018 | | 0.74 | |
| 2/12/2018 | | 0.51 | |
| 2/16/2018 | | 0.15 | |
| 2/18/2018 | | 0.74 | 7.5 |
| 2/22/2018 | | 0.15 | |
| 2/23/2018 | | 0.25 | |
| 2/24/2018 | | 0.15 | |
| 2/25/2018 | | 0.58 | |
| 2/26/2018 | | 0.29 | |
| 3/2/2018 | | 1.42 | |
| 3/3/2018 | | 0.88 | |
| 3/7/2018 | | 0.12 | 1 |
| 3/8/2018 | | 1.6 | 14 |
| 3/13/2018 | | 0.09 | 1 |
| 3/14/2018 | | 0.13 | 1.5 |
| 3/22/2018 | | 0.65 | 7.2 |
| 4/2/2018 | | 0.55 | 5.7 |
| 4/4/2018 | | 0.47 | |
| 4/16/2018 | | 1.44 | |
| 4/17/2018 | | 1.82 | |
| 4/19/2018 | | 0.3 | |
| 4/27/2018 | 3 Days, 0.52" | 0 | |
| 4/30/2018 | 2 Days, 0.38" | 0 | |
| 5/4/2018 | | 0.2 | |
| 5/6/2018 | | 0.13 | |

Notice of Violation and Intent to File Suit
June 2, 2021
Page 13 of 19

| Date | Multi-Day | Precip. | Snow |
|------|-----------|---------|------|
| 5/11/2018 | | 0.19 | |
| 5/13/2018 | | 0.19 | |
| 5/16/2018 | | 0.29 | |
| 5/17/2018 | | 0.97 | |
| 5/18/2018 | | 0.15 | |
| 5/19/2018 | | 0.15 | |
| 5/20/2018 | | 0.46 | |
| 5/23/2018 | | 0.34 | |
| 6/3/2018 | | 0.17 | |
| 6/4/2018 | | 1.31 | |
| 6/6/2018 | | 0.16 | |
| 6/21/2018 | | 0.35 | |
| 6/25/2018 | | 0.35 | |
| 6/28/2018 | | 1.26 | |
| 6/29/2018 | | 0.1 | |
| 7/4/2018 | | 0.84 | |
| 7/7/2018 | | 0.16 | |
| 7/15/2018 | | 0.89 | |
| 7/18/2018 | | 0.77 | |
| 7/22/2018 | | 0.53 | |
| 7/23/2018 | | 0.71 | |
| 7/24/2018 | | 0.55 | |
| 7/25/2018 | | 0.49 | |
| 7/26/2018 | | 0.52 | |
| 7/28/2018 | | 0.15 | |
| 8/2/2018 | | 1.23 | |
| 8/3/2018 | | 0.52 | |
| 8/4/2018 | | 1.95 | |
| 8/5/2018 | | 0.58 | |
| 8/8/2018 | | 0.17 | |
| 8/12/2018 | | 1.85 | |
| 8/14/2018 | | 0.79 | |
| 8/18/2018 | | 1.21 | |
| 8/19/2018 | | 0.18 | |
| 8/22/2018 | | 0.84 | |
| 9/1/2018 | | 0.12 | |
| 9/10/2018 | | 0.63 | |
| 9/11/2018 | | 0.74 | |
| 9/18/2018 | | 0.16 | |

| Date | Multi-Day | Precip. | Snow |
|------|-----------|---------|------|
| 9/19/2018 | | 0.29 | |
| 9/25/2018 | | 0.2 | |
| 9/26/2018 | | 2.84 | |
| 9/27/2018 | | 0.15 | |
| 9/28/2018 | | 1.09 | |
| 10/3/2018 | | 1.39 | |
| 10/5/2018 | | 0.12 | |
| 10/7/2018 | | 0.1 | |
| 10/12/2018 | | 0.86 | |
| 10/14/2018 | | 0.14 | |
| 10/20/2018 | | 0.1 | |
| 10/27/2018 | | 0.41 | |
| 10/28/2018 | | 0.56 | |
| 10/29/2018 | | 0.1 | |
| 11/3/2018 | | 1.26 | |
| 11/6/2018 | | 0.27 | |
| 11/7/2018 | | 0.62 | |
| 11/10/2018 | | 0.73 | |
| 11/13/2018 | | 0.72 | |
| 11/14/2018 | | 0.45 | |
| 11/16/2018 | | 1.85 | 6.7 |
| 11/25/2018 | | 1.46 | |
| 11/27/2018 | | 0.84 | |
| 12/2/2018 | | 0.66 | |
| 12/3/2018 | | 0.26 | |
| 12/15/2018 | | 0.15 | |
| 12/16/2018 | | 0.45 | |
| 12/17/2018 | | 1.16 | |
| 12/21/2018 | | 1.78 | |
| 12/22/2018 | | 0.71 | |
| 12/28/2018 | | 0.34 | |
| 12/29/2018 | | 0.77 | |
| 1/1/2019 | | 1.26 | |
| 1/5/2019 | | 0.31 | |
| 1/6/2019 | | 1.04 | |
| 1/20/2019 | | 1.4 | |
| 1/21/2019 | | 0.31 | |
| 1/24/2019 | | 0.35 | |
| 1/25/2019 | | 1.18 | |

Notice of Violation and Intent to File Suit
June 2, 2021
Page 14 of 19

| Date | Multi-Day | Precip. | Snow |
|------|-----------|---------|------|
| 1/30/2019 | | 0.4 | |
| 2/7/2019 | | 0.61 | |
| 2/8/2019 | | 0.29 | |
| 2/13/2019 | | 0.98 | |
| 2/18/2019 | | 0.24 | |
| 2/21/2019 | | 0.8 | |
| 2/24/2019 | | 0.48 | |
| 2/25/2019 | | 0.12 | |
| 3/1/2019 | | 0.15 | 1.5 |
| 3/2/2019 | | 0.45 | 4 |
| 3/4/2019 | | 0.85 | 8.5 |
| 3/10/2019 | | 0.27 | |
| 3/16/2019 | | 0.56 | |
| 3/22/2019 | | 1.3 | |
| 4/1/2019 | | 0.14 | |
| 4/6/2019 | | 0.3 | |
| 4/8/2019 | | 0.21 | |
| 4/10/2019 | | 0.12 | |
| 4/13/2019 | | 1.23 | |
| 4/15/2019 | | 0.85 | |
| 4/20/2019 | | 0.51 | |
| 4/21/2019 | | 0.63 | |
| 4/23/2019 | | 0.27 | |
| 4/26/2019 | | 0.24 | |
| 4/27/2019 | | 0.72 | |
| 4/30/2019 | | 0.21 | |
| 5/3/2019 | | 0.19 | |
| 5/4/2019 | | 0.18 | |
| 5/5/2019 | | 0.47 | |
| 5/6/2019 | | 0.87 | |
| 5/11/2019 | | 0.13 | |
| 5/12/2019 | | 0.5 | |
| 5/13/2019 | | 0.77 | |
| 5/14/2019 | | 0.71 | |
| 5/15/2019 | | 0.2 | |
| 5/20/2019 | | 1.04 | |
| 5/21/2019 | | 0.24 | |
| 5/23/2019 | | 0.25 | |
| 5/24/2019 | | 0.24 | |

| Date | Multi-Day | Precip. | Snow |
|------|-----------|---------|------|
| 5/27/2019 | | 0.21 | |
| 5/29/2019 | | 0.11 | |
| 5/30/2019 | | 0.69 | |
| 5/31/2019 | | 0.74 | |
| 6/11/2019 | | 1.49 | |
| 6/14/2019 | | 0.68 | |
| 6/19/2019 | | 1.23 | |
| 6/21/2019 | | 0.33 | |
| 6/22/2019 | | 0.22 | |
| 6/26/2019 | | 0.3 | |
| 7/7/2019 | | 0.45 | |
| 7/9/2019 | | 0.13 | |
| 7/12/2019 | | 0.61 | |
| 7/18/2019 | | 0.54 | |
| 7/19/2019 | | 0.3 | |
| 7/23/2019 | | 3.78 | |
| 8/1/2019 | | 0.29 | |
| 8/4/2019 | | 0.5 | |
| 8/8/2019 | | 0.41 | |
| 8/18/2019 | | 0.13 | |
| 8/22/2019 | | 0.24 | |
| 8/23/2019 | | 0.86 | |
| 8/29/2019 | | 0.15 | |
| 9/3/2019 | | 0.19 | |
| 10/3/2019 | | 0.15 | |
| 10/4/2019 | | 0.31 | |
| 10/8/2019 | | 0.36 | |
| 10/10/2019 | | 0.27 | |
| 10/17/2019 | | 2.58 | |
| 10/21/2019 | | 0.52 | |
| 10/23/2019 | | 0.48 | |
| 10/27/2019 | | 0.16 | |
| 10/28/2019 | | 1.62 | |
| 10/30/2019 | | 0.1 | |
| 10/31/2019 | | 0.5 | |
| 11/1/2019 | | 0.66 | |
| 11/8/2019 | | 0.21 | |
| 11/19/2019 | | 0.87 | |
| 11/24/2019 | | 0.67 | |

Notice of Violation and Intent to File Suit
June 2, 2021
Page 15 of 19

| Date | Multi-Day | Precip. | Snow |
|------|-----------|---------|------|
| 11/25/2019 | | 0.49 | |
| 12/2/2019 | | 0.6 | |
| 12/3/2019 | | 0.57 | 4.5 |
| 12/9/2019 | | 0.14 | |
| 12/10/2019 | | 1.06 | |
| 12/11/2019 | | 0.45 | |
| 12/14/2019 | | 1.45 | |
| 12/18/2019 | 2 Days, 0.64" | | |
| 12/30/2019 | | 0.68 | |
| 12/31/2019 | | 0.61 | |
| 1/3/2020 | | 0.1 | |
| 1/4/2020 | | 0.25 | |
| 1/13/2020 | | 0.13 | |
| 1/16/2020 | | 0.12 | |
| 1/19/2020 | | 0.39 | |
| 1/26/2020 | | 0.87 | |
| 2/6/2020 | | 0.29 | |
| 2/7/2020 | | 0.31 | |
| 2/8/2020 | | 0.18 | |
| 2/11/2020 | | 0.31 | |
| 2/12/2020 | | 0.26 | |
| 2/13/2020 | | 0.55 | |
| 2/26/2020 | | 0.19 | |
| 2/27/2020 | | 0.3 | |
| 3/4/2020 | | 0.23 | |
| 3/7/2020 | | 0.26 | |
| 3/13/2020 | | 0.34 | |
| 3/14/2020 | | 0.1 | |
| 3/17/2020 | | 0.12 | |
| 3/19/2020 | | 0.74 | |
| 3/24/2020 | | 0.69 | |
| 3/29/2020 | | 0.46 | |
| 3/30/2020 | | 0.27 | |
| 3/31/2020 | | 0.26 | |
| 4/10/2020 | | 0.14 | |
| 4/13/2020 | | 0.43 | |
| 4/14/2020 | | 1.24 | |
| 4/18/2020 | | 0.54 | |

| Date | Multi-Day | Precip. | Snow |
|------|-----------|---------|------|
| 4/19/2020 | | 0.11 | |
| 4/22/2020 | | 0.31 | |
| 4/24/2020 | | 0.4 | |
| 4/25/2020 | | 0.31 | |
| 4/27/2020 | | 0.33 | |
| 4/30/2020 | | 0.13 | |
| 5/1/2020 | | 1.13 | |
| 5/2/2020 | | 0.22 | |
| 5/9/2020 | | 0.7 | |
| 5/12/2020 | | 0.11 | |
| 5/16/2020 | | 0.2 | |
| 5/23/2020 | | 0.1 | |
| 5/24/2020 | | 0.83 | |
| 5/30/2020 | | 0.34 | |
| 6/4/2020 | | 0.52 | |
| 6/5/2020 | | 0.54 | |
| 6/12/2020 | | 0.4 | |
| 6/29/2020 | | 0.59 | |
| 6/30/2020 | | 0.85 | |
| 7/1/2020 | | 0.28 | |
| 7/4/2020 | | 0.23 | |
| 7/9/2020 | | 0.2 | |
| 7/11/2020 | | 1.21 | |
| 7/12/2020 | | 0.59 | |
| 7/18/2020 | | 1.56 | |
| 7/23/2020 | | 0.15 | |
| 7/31/2020 | | 0.38 | |
| 8/4/2020 | | 0.69 | |
| 8/5/2020 | | 0.57 | |
| 8/7/2020 | | 0.22 | |
| 8/16/2020 | | 0.16 | |
| 8/17/2020 | | 0.21 | |
| 8/18/2020 | | 0.64 | |
| 8/20/2020 | | 0.1 | |
| 8/26/2020 | | 0.3 | |
| 8/27/2020 | | 0.2 | |
| 8/29/2020 | | 0.13 | |
| 9/1/2020 | | 0.31 | |
| 9/2/2020 | | 0.21 | |

Notice of Violation and Intent to File Suit
June 2, 2021
Page 16 of 19

| Date | Multi-Day | Precip. | Snow |
|---|---|---|---|
| 9/3/2020 | | 0.44 | |
| 9/10/2020 | | 0.87 | |
| 9/28/2020 | | 0.11 | |
| 9/30/2020 | | 1.82 | |
| 10/2/2020 | | 0.13 | |
| 10/12/2020 | | 0.7 | |
| 10/16/2020 | | 1.18 | |
| 10/26/2020 | | 0.13 | |
| 10/27/2020 | | 0.26 | |
| 10/30/2020 | | 2.05 | |
| 11/12/2020 | | 1.14 | |
| 11/13/2020 | | 0.17 | |
| 11/16/2020 | | 0.33 | |
| 11/23/2020 | | 0.39 | |
| 11/26/2020 | | 0.7 | |
| 11/30/2020 | | 1.82 | |
| 12/5/2020 | | 1.13 | |

| Date | Multi-Day | Precip. | Snow |
|---|---|---|---|
| 12/14/2020 | | 0.18 | |
| 12/25/2020 | | 1.36 | |
| 12/30/2020 | | 0.34 | |
| 1/16/2021 | | 1.24 | |
| 3/19/2021 | | 0.85 | |
| 3/25/2021 | | 0.7 | |
| 3/30/2021 | | 0.66 | |
| 4/1/2021 | | 0.44 | |
| 4/13/2021 | | 0.62 | |
| 4/16/2021 | | 1.05 | |
| 4/17/2021 | | 0.15 | |
| 4/21/2021 | | 0.3 | |
| 4/25/2021 | | 0.57 | |
| 4/29/2021 | | 0.27 | |
| 5/4/2021 | | 1.02 | |
| 5/10/2021 | | 0.74 | |

Rockland Transit Mix is liable for the above-described violations occurring prior to the date of this letter, and for every day after the date of this letter that these violations continue.  In addition to the violations set forth above, this Notice covers all violations of the CWA evidenced by information that becomes available to Notifiers after the date of this Notice of Intent to File Suit.[54]  These violations are ongoing and, barring full compliance with the permitting requirements of the Clean Water Act, these violations will continue.

## VI.

## RELIEF REQUESTED

Notifiers will ask the court to order Rockland Transit Mix to comply with the CWA, to pay penalties, and to pay Notifiers' costs and legal fees.

First, Notifiers will seek declaratory relief and injunctive relief to prevent further violations of the Clean Water Act pursuant to Sections 505(a) and (d) and such other relief as permitted by law.  Notifiers will seek an order from the Court requiring Rockland Transit Mix to

[54] *See, e.g. Pub. Interest Research Grp. v. Hercules, Inc.*, 50 F.3d 1239, 1248-49 (3d Cir. 1995) (a notice that adequately identifies specific violations to a potential defendant also covers repeated and related violations that the plaintiff learns of later. "For example, if a permit holder has discharged pollutant 'x' in excess of the permitted effluent limit five times in a month but the citizen has learned only of four violations, the citizen will give notice of the four violations of which the citizen then has knowledge but should be able to include the fifth violation in the suit when it is discovered.")

Notice of Violation and Intent to File Suit
June 2, 2021
Page 17 of 19

obtain NPDES permit coverage and to correct all other identified violations through direct implementation of control measures and demonstration of full regulatory compliance.

Second, pursuant to CWA Section 309(d),[55] each separate violation of the CWA subjects Rockland Transit Mix to a penalty not to exceed $56,460 per day.[56]  Notifiers will seek the full penalties allowed by law.

Third, pursuant to CWA Section 505(d), Notifiers will seek recovery of its litigation fees and costs (including reasonable attorney and expert witness fees) associated with this matter.[57]

## VII.

## PERSONS GIVING NOTICE

The full name, address, and telephone number of the persons giving notice are as follows:

Hackensack Riverkeeper, Inc.
231 Main Street
Hackensack, NJ 07601
(201) 968-0808
Attn.: Michele Langa

New City Neighborhood Association, Inc.
337 North Main St.
Suite 6A
New City, NY 10956
(914) 774-0336
Attn.: Z Halo

## VIII.

## IDENTIFICATION OF COUNSEL

Notifiers are represented by legal counsel in this matter.  The name, address, and telephone number of Notifiers' attorneys are:

Edan Rotenberg, Esq.
Benjamin Pierce, Esq.
Super Law Group, LLC
180 Maiden Lane, Suite 603
New York, New York 10013

---

[55] 33 U.S.C. § 1319(d); *see also* 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalties for Inflation).
[56] 40 C.F.R. §§ 19.2 and 19.4.
[57] 33 U.S.C. § 1365(d).

Notice of Violation and Intent to File Suit
June 2, 2021
Page 18 of 19

(212) 242-2355

## IX.

## __CONCLUSION__

The foregoing provides more than sufficient information to permit Rockland Transit Mix to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.[58]

If Rockland Transit Mix has developed a SWPPP, Notifiers request that Rockland Transit Mix send a copy to the undersigned attorney.[59]  Otherwise, Notifiers encourage Rockland Transit Mix to begin developing a SWPPP immediately after receiving this letter and ask that Rockland Transit Mix please inform the undersigned attorney of Rockland Transit Mix's efforts so Notifiers can work with Rockland Transit Mix to avoid disputes over the contents of the SWPPP.[60]

During the sixty-day notice period, Notifiers are willing to discuss effective remedies for the violations noted in this letter that may avoid the necessity of protracted litigation.  If Rockland Transit Mix wishes to pursue such discussions, please contact the undersigned attorney immediately so that negotiations may be completed before the end of the sixty-day notice period. We do not intend to delay the filing of a complaint in federal court, regardless of whether discussions are continuing at the conclusion of the sixty days.

Very truly yours,

Benjamin Pierce

---

[58] 40 C.F.R. § 135.3(a).

[59] Note that under Part III.C.2 of the General Permit, the owner or operator of a facility "must make a copy of the SWPPP available to the public within 14 days of receipt of a written request."

[60] Notifiers will not send a new notice letter in response to any effort Rockland Transit Mix makes to come into compliance with the Clean Water Act after receiving this letter, for example, by developing a SWPPP.  The federal courts have held that citizens sending a notice letter are not required to identify inadequacies in compliance documents that do not yet exist and are "not required to send a second notice letter in order to pursue specific claims regarding the inadequacies of [a defendant's] post-notice compliance efforts." *WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 920 (9th Cir. 2004). *See also Sw. Marine, Inc.*, 236 F.3d at 997 (9th Cir. 2000) ("subject matter jurisdiction is established by providing a notice that is adequate on the date it is given to the defendant.  The defendant's later changes . . . do not retroactively divest a district court of jurisdiction under 33 U.S.C. § 1365(b)."); *Anglebrook Ltd. P'ship*, 891 F. Supp. at 908 (S.D.N.Y. 1995) (plaintiff's notice letter based on inadequacies of defendant's original SWPPP held sufficient to establish court's jurisdiction, even though defendant later prepared a revised SWPPP).

Notice of Violation and Intent to File Suit
June 2, 2021
Page 19 of 19

Edan Rotenberg
Super Law Group, LLC
180 Maiden Lane, Suite 603
New York, New York 10038
(212) 242-2355
*Attorneys for Notifiers*

cc:

Michael S. Regan, Administrator
Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Walter Mugdan, EPA Region 2 Acting Administrator
Environmental Protection Agency
290 Broadway
New York, NY 10007-1866

Basil Seggos, Commissioner
New York State Department of Environmental Conservation
625 Broadway
Albany, NY 12233-1011