UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HACKENSACK RIVERKEEPER, INC. and NEW CITY NEIGHBORHOOD ASSOCIATION, INC., <br> Plaintiffs, <br><br> v. <br><br> ROCKLAND TRANSIT MIX, INC. and BRUNO PALMIERI, <br> Defendants. | Case No. 7:21-cv-06919 <br><br> **CONSENT DECREE** |

WHEREAS, Plaintiff Hackensack Riverkeeper, Inc. is a not-for-profit environmental organization, organized under the laws of the state of New Jersey, with its principal place of business located at 206 Main Street, Hackensack, New Jersey 07601.

WHEREAS, Plaintiff New City Neighborhood Association, Inc. is a not-for-profit organization, organized under the laws of the state of New York, with its principal place of business located at 188 S. Mountain Road, New City, New York 10956.

WHEREAS, Defendant Rockland Transit Mix, Inc. ("RTM") is a domestic corporation incorporated under the laws of the State of New York that has an office at 381 Route 59, West Nyack, New York 10994 and participates in ownership and operation of the Facility.

WHEREAS, Defendant Bruno Palmieri is a corporate officer and manager of Rockland Transit Mix, Inc. and is responsible for operation of the Facility.

WHEREAS, RTM received a Notice of Violation and Intent to File Suit (the "Notice Letter"), sent by Super Law Group, LLC, on behalf of the Plaintiffs, on June 2, 2021, asserting various violations of the Clean Water Act ("CWA");

WHERES, Rogers Habas & Eisen, PC, on behalf of the Defendants, sent a letter dated July 21, 2021, advising Plaintiffs that an environmental engineer has been engaged to conduct a review of issues and to prepare a Storm Water Pollution Prevention Plan ("SWPPP") consistent with the requirements of state requirements and sought until September 24, 2021 to complete same;

WHEREAS, Plaintiffs allege RTM discharged polluted stormwater runoff from its ready-mix concrete facility located at 381 Route 59, West Nyack, New York 10994 ("the Facility") into the waters of the United States, including the Hackensack River, a navigable water of the United States.

WHEREAS, the Facility operates under a primary Standard Industrial Classification ("SIC") Code of 3273 and therefore any discharge of stormwater associated with activities at the Facility is subject to the General Permit for the Discharge of Stormwater Associated with Industrial Activity ("General Permit") issued by the New York State Department of Environmental Conservation ("DEC"), Permit No. GP-0-17-004.

WHEREAS, Plaintiffs filed this action on August 17, 2021 alleging violations of 33 U.S.C. §§ 1311(a) and 1342 of the CWA and seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs.

WHEREAS, Plaintiffs alleged in its complaint (the "Complaint") and in its earlier Notice Letter that RTM violated and continues to violate CWA Section 33 U.S.C. §§ 1311(a) and 1342 by, inter alia, discharging polluted stormwater associated with industrial activity without coverage under the General Permit and by failing to comply with the conditions of the General Permit.

WHEREAS, RTM denies the allegations set forth in Plaintiffs' Complaint.

WHEREAS, RTM submitted to the New York Department of Environmental Conservation a Notice of Intent to be covered under the General Permit on September 22, 2021.

WHEREAS, RTM obtained and is currently covered under the General Permit.

WHEREAS, without any concession or admission by RTM that it violated the Clean Water Act, or any concession or admission by Plaintiffs that RTM's implementation of the measures listed below will prevent all discharge of polluted stormwater or will assure compliance with the terms and conditions of the General Permit, Plaintiffs and Defendants (collectively, "the Parties" or individually "Party") agree that it is their mutual interest to resolve this matter without the taking of evidence or findings of fact or law, and the Parties would like to avoid prolonged and costly litigation; and

WHEREAS, this Decree shall be submitted to the United States Department of Justice and the United States Environmental Protection Agency for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c);

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Defendants of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:**

### I. DEFINED TERMS

The defined terms set forth in the foregoing recitals are hereby incorporated into the body of this Decree and are made a part hereof. Terms used in this Consent Decree that are defined in the

CWA and its implementing regulations shall have the meanings assigned to them in the Acts or such regulations, unless otherwise provided in this Consent Decree. In addition, the following terms used in this Decree have the meaning set forth below:

1. Effective Date: the date upon which this Consent Decree is fully executed.

2. Term of this Decree ("Term"): the period beginning on the Effective Date and ending three (3) years from the date of the Effective Date. Upon termination of the term, the Decree's provisions shall be null and void.

3. The Facility: Rockland Transit Mix ("RTM"), the ready-mix concrete facility located at 381 Route 59, West Nyack, New York 10994.

4. The Agencies: the United States Environmental Protection Agency and the United States Department of Justice.

5. Defendant(s): Rockland Transit Mix, Inc. and Bruno Palmieri.

## II. JURISDICTION AND VENUE

6. **Jurisdiction.** Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). Plaintiffs have standing and has complied with the statutory notice requirements under the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2. An actual, justiciable controversy exists between Plaintiffs and RTM. The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a).

7. **Venue.** Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to this action occurred at the Facility and in the Hackensack River, a navigable water of the United States, that are located within this judicial district.

8. **Consent.** For purposes of this Decree, or any action to enforce this Decree, RTM consents to the Court's jurisdiction over this Decree and any such action and over Defendant. For purposes of this Decree, RTM consents to venue in this judicial district.

9. **Dismissal of Bruno Palmieri.** All of the parties that have appeared in this action are signatories to this Decree. Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), all of the parties stipulate to the voluntary dismissal of Defendant Bruno Palmieri from this action as of the Effective Date.

## III. COVERAGE UNDER THE GENERAL PERMIT

10. **SWPPP Amendments.** If, during the Term of this Decree, RTM amends the SWPPP, or are required to amend the SWPPP for any reason including but not limited to the reasons enumerated in the General Permit, RTM shall provide written notice to Plaintiffs

within fourteen (14) days of the amendment and shall provide Plaintiffs with all documents related to such amendment.

11. **Implemented Storm Water Controls.** Defendant shall maintain in good working order all storm water collection and treatment systems currently installed or to be installed pursuant to this Consent Decree, including but not limited to existing housekeeping measures.

## IV. MONITORING PROGRAM

12. **Recordkeeping.** RTM will comply with the reporting and recordkeeping requirements of the General Permit. RTM shall maintain written documentation at the Facility describing all inspections and assessments required under applicable provisions of the General Permit or of this Decree.

13. **Results sent to Plaintiff.** RTM will send to Plaintiffs a copy of every inspection record and sampling result taken during the Term of this Decree once per calendar year, no later than February 1 of the following year or on the last day during which this Decree is in effect, whichever is sooner, unless earlier reporting of an exceedance or violation is required pursuant to Section V.

14. **Provision of Documents to Plaintiffs.** During the Term of this Decree, RTM shall provide Plaintiffs with copies of any documents or correspondence related to discharges of pollution from the Facility to waterbodies or sewers of any kind or Clean Water Act compliance regarding the Facility submitted to any governmental agency, including but not limited to the Agencies and the DEC as required under the General Permit. This includes, but is not limited to:
    a. Documents and correspondence related to RTM obtaining NPDES permit coverage at the Facility;
    b. Annual Reports;
    c. Monitoring or sampling data;
    d. Revisions to the SWPPP;
    e. Data related to discharges to the sanitary sewer system, if any; and
    f. Reports of spills or other incidents that may result in discharge of pollutants to a waterbody or sewer; and

Documents and correspondence related to re-registration or termination of NPDES permit coverage at the Facility.

## V. EXCEEDANCES AND VIOLATIONS

15. **Reporting and Benchmark Exceedances.** Notwithstanding the annual reporting schedule set forth in Section IV, if at any point during the Term of this Decree the analytical results of any sample for any parameter exceeds any applicable *benchmark monitoring cutoff concentration* established in the General Permit, RTM shall report the event to Plaintiffs and provide the analytical results within seven (7) days of receiving the analytical results.

4

16. **Corrective Action.** Where a benchmark monitoring cutoff concentration is exceeded, or when Plaintiffs provides RTM notice of non-compliance, RTM shall take responsive actions to improve storm water management practices, including re-evaluating structural and non-structural BMPs and considering additional BMPs aimed at reducing pollutant levels observed in samples. Within thirty (30) days of discovering such exceedance or non-compliance, RTM shall provide Plaintiff with a Memorandum containing the following information:

    a. Identification of any constituent that experienced an exceedance;
    b. Explanation of the possible cause(s) and/or source(s) of the non-compliance; and
    c. Explanation of Defendants' planned responsive actions.

    RTM shall complete all responsive actions within twelve (12) weeks of discovery, unless Plaintiffs concurs to an extended timeline for completion. Any concurrence or failure to object by Plaintiffs shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's stormwater into compliance with applicable water quality criteria or the Clean Water Act's technology-based standards requiring industrial stormwater discharges to be controlled to the level achievable by the best available technology economically available.

## VI. PAYMENTS

17. **Environmental Benefit Payment ("EBP").** RTM, as part of this agreement, is paying fifteen thousand dollars ($15,000) to the Town of Clarkstown (the "EBP Recipient") for use on mapping the town's municipal separate storm sewer catch basins, drains, and sewers. This payment has been placed in escrow with Defendants' attorney. The payment shall be sent via certified mail, or similar service with tracking, within seven (7) business days of the Effective Date. Defendants shall concurrently notify Plaintiffs that payment has been sent and provide the tracking number, in writing. None of this payment shall be disbursed to Plaintiffs.

18. **Fees, Costs, and Expenses.** RTM shall pay a sum of fifteen thousand dollars ($15,000) as full and complete satisfaction of Plaintiffs' claims for attorneys' fees and costs incurred including investigative and expert costs. The checks shall be payable to "Super Law Group, LLC Attorney Trust - IOLA". Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Plaintiffs.

19. **Compliance Oversight Fees and Costs.** Plaintiff will incur costs in order to monitor Defendants' compliance with this Decree, including but not limited to costs incurred by Plaintiffs or their counsel or consultants to collect or review water quality sampling data, review annual reports, and discuss with representatives of Defendants any potential changes to compliance requirements, preparation and participation in mediation, and similar activities. To help defray these costs, RTM agrees to put one thousand dollars ($1,000) in escrow with RTM's attorney. Plaintiffs or their attorneys shall present to RTM an invoice for any payment they propose to take from this sum to cover compliance oversight fees and costs. RTM shall have two weeks from receipt of any

such invoice to object to the sum claimed. If RTM does not object, RTM's attorneys shall issue a check to pay the proposed sum to Plaintiffs or their attorneys. If RTM objects, the Parties shall follow the Dispute Resolution Procedure set forth in Section X. Any funds not used during the Term of this Decree shall be donated to the EBP recipient identified above.

## VII. EFFECT OF DECREE

20. **Plaintiffs' Release of Liability.** Upon Court approval and entry of this Consent Decree, Plaintiffs covenant not to sue and release Defendants (including their representatives, assigns, agents, employees, officers, attorneys and consultants) from any and all claims, causes of action, or liability related to stormwater under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, or any other claim or relief (a) relating to or resulting from noncompliance with the Clean Water Act occurring prior to the Effective Date, and (b) for any past violations of the Clean Water Act at the Facility alleged, or that could have been alleged in the Complaint and causes of action of every nature which concern or are connected with this action. This Paragraph does not constitute a waiver or release of any claims relating to the enforcement of this Decree.

21. **Reservation.** Plaintiffs do not waive their right to bring a future action for injunctive or declaratory relief, penalties, and attorneys' fees and costs based on stormwater discharges that occur after the Term of this Decree. At this time Defendants are unaware of any claims against Plaintiffs.

22. **Compliance with Law.** Plaintiffs do not by consent to the Decree warrant or aver in any manner that RTM's compliance with this Decree shall constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligations of RTM to comply with all federal, state, and local laws and regulations governing any activity required by this Decree, however compliance with this agreement precludes Plaintiffs and Plaintiffs' attorneys from bringing a new legal action against RTM during the term of this decree.

23. **Impossibility of Performance.** Where implementation of the actions set forth in this Decree within the agreed deadlines becomes impossible, despite the timely good faith efforts of the Parties, the Party who is unable to comply shall notify the others in writing within seven (7) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The Parties agree to meet and confer in good faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of one of the Parties, new performance deadlines shall be established. If the Parties cannot timely agree upon the terms of such a stipulation, either shall have the right to seek intervention of the Court.

## VIII. FEDERAL REVIEW OF DECREE

24. **Review by Agencies.** The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Decree cannot be entered until forty-five (45) days after the receipt of a copy of the

6

proposed Decree by the Agencies. Therefore, upon signing of this decree by the Parties, Plaintiffs shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. If for any reason the United States should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Decree raised by the United States.

25. **Entry of Order.** Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall move the Court for entry of this Decree. This Decree shall take effect upon execution by the Parties and terminate three (3) years later. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## IX. MODIFICATION AND ENFORCEMENT OF DECREE

26. **Modification in Writing.** Once entered by the Court, this Decree may be modified only upon written consent of the Parties and the approval of the Court.

27. **Continuing Jurisdiction of the Court.** The United States District Court for the Southern District of New York shall retain and shall have jurisdiction over the Parties to this Decree for the resolution of any disputes that may arise under this Decree. This Court shall also allow this action to be reopened for the purpose of enabling the Parties to this Decree to enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree.

## X. DISPUTE RESOLUTION PROCEDURE

28. **Meet and Confer.** Any disputes with respect to any of the provisions of this Consent Decree shall be, in the first instance, the subject of informal negotiations between the Parties affected by the dispute to attempt to resolve such dispute.

29. **Motion.** If a dispute between the Parties cannot be resolved by informal negotiations, a Party may file a motion with the Court seeking resolution of the dispute. The motion shall set forth the nature of the dispute and a proposal for its resolution. The other Party shall have 30 days to respond to the motion and propose an alternate resolution.

30. **Notice.** The moving Party shall provide the other Party with seven (7) days written notice prior to initiating court proceedings to enforce this Decree.

31. **Fee Awards.** In resolving any dispute arising from this Agreement, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall be considered in the allocation of fees and costs in connection with the resolution of any disputes before the Court.

## XI. MISCELLANEOUS PROVISIONS

32. **Entire Agreement.** This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements, and understandings, whether oral or written, among the Parties.

33. **Notices.** Any notice, demand, copies of documents, or other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given: (a) if delivered by courier, when actually received or refused by the addressee; (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs; or (c) if e-mailed, when acknowledged by the addressee. Each Party shall promptly notify the other Party of any change in this contact information, including but not limited to a change in representation.

| Notices for Plaintiffs shall be sent to: | Notice for RTM shall be sent to: |
|---|---|
| Edan Rotenberg<br>edan@superlawgroup.com<br>and<br>Benjamin Pierce<br>ben@superlawgroup.com<br><br>Super Law Group, LLC<br>110 Wall Street<br>New York, NY 10005<br><br>Notices sent to the individuals listed above at the address listed above shall be deemed as notice to Plaintiffs. | Patricia Habas<br>phabas@rhelawpc.com<br><br>Rogers, Habas & Eisen, P.C.<br>100 Dutch Hill Road, Suite 380<br>Orangeburg, New York 10962<br><br>Notices sent to the individual listed above at the address listed above shall be deemed as notice to RTM. |

34. **Authorization.** Each person signing this Decree represents and warrants that he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

35. **Successors and Assigns.** This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

36. **Transfer of Ownership.** RTM shall notify Plaintiffs prior to any transfer of ownership or control of the Facility to a non-Party (during the term of this Decree). RTM agrees that as a condition of transfer of ownership or control of the Facility, the new owner or operator shall be informed in writing of this Consent Decree.

8

37. **Interpretation.** The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto. The language in all parts of this Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

38. **Headings.** The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

39. **Counterparts.** This Decree may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. The Parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original. Any one of such completely executed counterparts shall be sufficient proof of this Decree. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this Decree. Copies of the original Decree, whether transmitted by facsimile or other means, shall be effective.

40. **Severability.** In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

41. **Changes to the General Permit.** RTM will comply fully with the General Permit and any permit modification, individual permit, or General Permit reissuance applicable to the Facility during the Term of this Decree.

42. **Publicity**. Neither RTM nor Plaintiffs shall make any public statement in any press release or in another writing regarding the Consent Decree or the enforcement suit other than to legally effectuate the claims herein.

## XII. EXHIBITS

43. The following exhibits are attached to this Decree and made a part hereof:

    a. Exhibit A: Stormwater Pollution Prevention Plan

Dated: 3/17/2022

Rockland Transit Mix, Inc.

By: Bruno Palmieri
Title: President

9

Dated: March 14, 2022                    Hackensack Riverkeeper, Inc.

                                         By: Michele Langa
                                         Title: Staff Attorney


Dated: _____            New City Neighborhood Association, Inc.

                                         _____
                                         By:
                                         Title:


ENTERED and DATED this  3  day of   May   , 2022

                                         _____
                                         Honorable  Kenneth M. Karas
                                         United States District Judge

10



a. Exhibit A: Stormwater Pollution Prevention Plan

Dated: 3/17/2022

Rockland Transit Mix, Inc.

By: Bruno Palmieri
Title: President

Dated: _____

Hackensack Riverkeeper, Inc.

By:
Title:

Dated: March 14, 2022

New City Neighborhood Association, Inc.

By: Z. Halo
Title: President

ENTERED and DATED this ___ day of _____, 2022

Honorable _____
United States District Judge

10